KLEIN, Escheator of Pennsylvania, v. BROD-BECK.

Nos. 8133, 8135.

District Court, E. D. Pennsylvania.

Sept. 6, 1934.

A. Jere Creskoff and Grover C. Ladner, both of Philadelphia, Pa., for petitioner.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for the United States.

DICKINSON, District Judge.

Leave was given to file supplemental briefs. The cause is now ripe for a ruling.

The main objective of these proceedings is clear enough. The petitioner, who styles himself "Escheator of the Commonwealth of Pennsylvania," seeks to recover moneys, part of which is in the registry of this court and part in the Treasury of the United States. His claim to it is that this money is property which has escheated to Pennsylvania. Some of the obstacles he must surmount before he can get the money are suggested by the caption given to the present proceedings. We have followed the form adopted by him.

The District Courts of the United States have many capacities in which they may sit. They may sit as courts of law; as courts of equity; as courts in admiralty; as bankruptcy courts; and in many capacities. We have designated these proceedings as in equity because the petitioner has so designated them. We have given the subheading of a motion to dismiss because the present status of the proceedings was so referred to at the argument. We have not the record before us, so do not know whether any such formal motion has been made. There is no real importance in this, because if the prayers of the petitions cannot be granted the petitions are dismissed. We do not have access to the petitions, so assume that the prayers are that this court enter judgments of escheat by analogy to the action which would be taken by the state courts in escheat proceedings.

We will treat this as the real question before us. Can this court enter a judgment of escheat in favor of the commonwealth of Pennsylvania? It is an anticipation, but we may interpolate here the comment that this is a wholly different question from that of whether this court would recognize the claims of Pennsylvania to these moneys under a title by escheat.

These moneys are in the hands of this court, or still, as to distribution, under its control. If any one turned up as a claimant owner, we could award the moneys to him. "Any one" would include Pennsylvania. Any claimant, however, would be required to show title before he could receive an award. This likewise includes Pennsylvania.

We have been favored with a very full discussion of the subject of escheat and the right of Pennsylvania to claim these moneys by escheat as a sovereign state. We would go much beyond what we are asked to do to support such claims of a sovereign. A sovereign is omnipotent, restrained only by the laws of nature and his relations with other sovereign powers. The latter restricts him to his own domains. Within them he is the ultimate owner of everything and may take whatever he chooses to take. He may make no compensation for what he takes. This power we know as the right of eminent domain. Its existence was the prompting for the common constitutional limitation "that

474

private property shall not be taken for public use without just compensation." The very restriction upon the exercise of the absolute power to take implies its existence. This principle of ultimate ownership is the basis for what is known as the right of escheat. The right is absolute, but the sovereign will not exercise it except in the absence of other owner claimants.

There can be no question of the possession by Pennsylvania of the so called "right of escheat." The limitation of which we have spoken exists because every sovereign is bound by the necessities of the case to restrict the exercise of his sovereign powers to his own domains. If he did not there would be trouble. He is assumed to so agree. Pennsylvania would not, for illustration, assert the power to escheat property in New Jersey. Why? Because New Jersey is also a sovereign power with the right to escheat property within its domain. In no other way can a clash be avoided. Precisely the same principle applies to the United States. It is likewise a sovereign.

Out of this situation a conflict of rival claims might arise, the discussion provoked by which would be very interesting. Into this as yet we see no reason to go. The question before us is a narrower one.

■■■ There is a distinction between "escheatable" and "escheated." The Pennsylvania Acts of Assembly recognize this and indeed use these very phrases. The title of Pennsylvania to any property subject to escheat is not because the property is "escheatable," but because it has been escheated. We can award moneys under the control and disposition of the court only to those who establish title thereto. The act of Congress (28 U.S.C.A. § 852) which makes these moneys subject to the award of this court does so only in favor of "any person or persons, corporation or company" who can lay successful claim of ownership thereto. Assuming arguendo the state to be within this act, it is able as yet to show no title to these moneys. Under the facts it may or may not be able to secure a judgment of escheat, but it has not done so. Counsel for petitioner recognizes this, and hence ask this court to enter such a judgment. Have we the jurisdictional power to so do? The touchstone of the answer to this question is to ask another. Had the petitioner gone into one of the several courts of common pleas, the or-

phans' court, or the municipal court of Philadelphia, to ask it for such judgment or decree, and the like question of power had been raised, how would it be answerable? The answer would be some cited act of Assembly had conferred the power. Where does this court get its power? The answer given us, and it is the only answer which could be given, is "from the same Acts of Assembly." This answer is not convincing for it encounters the principle that an act of Assembly of the state can neither confer jurisdictional powers upon this court nor abridge those which we possess as courts of the United States.

Some minor procedural difficulties have been suggested. Some of this money is or was subject to the jurisdiction of the court of equity; some of the admiralty court; and some of the bankruptcy court. We see no importance in these distinctions of jurisdiction and of powers. However the different funds were raised when they had been paid into the registry of the court or had been turned into the Treasury of the United States, the act of Congress empowers the District Court to decree, on the application of a claimant, to whom the moneys belong. This means title. Evidence that money is "escheatable" is no evidence that it has been escheated, and the state has no title until there has been an escheat. The state statutes make this clear. The real position of the petitioner is that the state statutes have conferred jurisdiction upon no state court to enter judgment to escheat these moneys, but they have conferred it upon this court. This they cannot do, and we in consequence have no such power. Our powers are those conferred by Congress, and Congress has restricted us to awarding the fund to the one who has title to it. Congress has passed no general escheat statute. The state has, and no title by escheat can be acquired otherwise than by a compliance with those statutes. When the petitioner is able to show title to these moneys, it will then be our duty to pass judgment upon the title set up. Then, but not until then, will the very interesting questions discussed arise. If we are now asked to award these moneys to the state under the authority of the cited act of Congress, we answer that it empowers us to make the award only to those who prove title, and the state has as yet no title. If we are asked to confer title by entering a judgment of escheat in.

favor of the state and thus give it title, our answer is that we have no jurisdictional power to so do.

The prayers of the petitioner are denied, and the petitions dismissed.